WILLIAM C. JACKSON and Others, Individually and as Copartners Doing Business under the Firm Name and Style of JACKSON BROS., BOESEL & COMPANY, Respondents, v. NEW YORK COTTON EXCHANGE and PHELAN BEALE, Carrying on Business under the Firm Name and Style of BOUVIER & BEALE, Appellants, and SPENCER WATERS, Defendant.

First Department, April 19, 1940.

*Phelan Beale* of counsel [*John S. V. Kilmartin* with him on the brief, *Bouvier & Beale*, attorneys], for the appellants.

*Arthur B. King* of counsel [*Buhler, King & Miller*, attorneys], for the respondents.

UNTERMYER, J. On February 8, 1933, the plaintiffs obtained judgment for $315,687.80 against Spencer Waters, a member of the New York Cotton Exchange. An order in supplementary proceedings, restraining the defendant exchange from transferring Waters' membership, resulted in his suspension from trading. The suspension continued until about October 25, 1933, when the plaintiffs entered into an agreement with Spencer Waters and his brother

Rossiter L. Waters, whereby Spencer Waters was permitted to resume trading on the exchange and he agreed, upon demand, to take whatever measures might be necessary, " subject to the rules of the said New York Cotton Exchange," to cause his seat to be sold.

Spencer Waters resumed trading on the exchange, but on August 12, 1936, in accordance with the procedure and rules of the exchange, he posted a notice of intention to transfer his membership. Within the ten-day period during which notice was required to remain posted, three member firms of the exchange filed claims for $793.49, $320.58 and $9,671.34, respectively, against the membership of Waters for debts arising from cotton transactions in the New York market. Waters' seat was sold on August 26, 1936, without notice to the plaintiffs, for $14,500, which was paid into the custody of the exchange.

Subsequent to the commencement of this action, and without notice to the plaintiffs, the supervisory committee of the exchange, after hearings duly held, allowed in full the claims above enumerated. Since those claims were entitled to priority under the by-laws of the exchange, the secretary was directed to make payment out of the proceeds of sale of Waters' membership. In addition, the committee, pursuant to section 60 of the by-laws, ordered payment to the defendant Beale, its counsel, of counsel fees of $1,000 and disbursements of $225.15 incurred in the defense of this action and for other services affecting Waters' membership and the proceeds of sale. Section 60 provides:

" Any officer of the Exchange who may be served with an attachment, injunction, or other legal process or notice, emanating from a Court or Judge, or any officer of a Court, affecting the membership or right of membership of any member of the Exchange, shall at once notify the Secretary, who shall immediately post on the bulletin of the Exchange a notice in writing describing the document so served, and the name of the member whose membership or right of membership it purports to affect, and shall keep the same posted until said attachment, injunction, process or notice shall have been vacated.

" All disbursements, including counsel fees, made by the Exchange in litigation affecting a membership or the proceeds of the sale thereof, shall be a lien thereon and collected by the Exchange from such membership or the proceeds of its sale."

The second paragraph of this section was added by an amendment to the by-laws adopted on July 3, 1934. The plaintiffs, who were not members of the exchange, protested against the sale of the seat and the payment to Bond, McEnany & Co., the largest of the three member claimants, of any portion of the proceeds of sale. There-

after the members of that firm were brought into this action as additional parties defendant.

The Special Term has held that the plaintiffs are entitled to judgment against the fund in possession of the exchange, after deduction of the claims of members, the claim of Bond, McEnany & Co. having been reduced by $5,700, the value at the date of trial of collateral in their possession. Accordingly, the court directed payment of the balance of $9,414.59 to the plaintiffs. However, the claim of the defendant Beale for $1,000 counsel fees and $225.15 disbursements, against said fund, was disallowed.

After the filing of the record in this court, the defendants, copartners in the firm of Bond, McEnany & Co., and the defendant Elwood P. McEnany, individually, made a settlement with the plaintiffs and withdrew their appeals. Accordingly the appeal is now limited to that part of the judgment which disallows the claim of the defendant Beale in the aggregate amount of $1,225.15. These allowances were rejected by the Special Term on the ground that the amendment to section 60 of the by-laws was adopted more than a year after the plaintiffs secured their judgment, and that even if the plaintiffs had contracted to be bound by future amendments to the by-laws in their contract with Spencer Waters, an amendment of a confiscatory character would not fall within the purview of the contract. The plaintiffs do not controvert the reasonableness of the allowance for counsel fees and expenses but only the propriety of any allowance under the circumstances here. We think the exchange, by its by-laws, had the right to subject the membership of Spencer Waters to these disbursements and that the plaintiffs, his judgment creditors, are in no better position than he.

By the special act under which it was organized (Laws of 1871, chap. 365), the exchange had power to make rules for the admission and government of its members. Consistent therewith Spencer Waters in 1905 as a condition of membership in the exchange signed the constitution and by-laws of the exchange, pledging that he would abide by its rules and all subsequent amendments. Under the last paragraph of section 60, adopted as an amendment to the by-laws on July 3, 1934, the exchange has imposed the charges against the proceeds of Waters' membership. Though not in effect when the plaintiffs procured their judgment against Waters, that amendment was in effect when his membership was sold and this action commenced. It cannot be denied that at that time Spencer Waters' rights were subordinate to then existing by-laws (*Hyde* v. *Woods*, 94 U. S. 523; *Belton* v. *Hatch*, 109 N. Y. 593; *Weston* v. *Ives*, 97 id. 222; *Powell* v. *Waldron*, 89 id. 328), under which the exchange had the power to impose a charge to reimburse itself for counsel

fees and expenses. We do not perceive why a creditor should occupy a position superior to the member through whom the creditor derives his rights. The transferee of a membership in the exchange would be subject to any limitations and disabilities contained in the by-laws. There is no reason to hold that a judgment creditor of a member secures more extensive rights than the member himself could have exercised. (Meyer, Law of Stockbrokers and Stock Exchanges, § 152.)

The judgment, so far as appealed from, should accordingly be modified by reducing the amount adjudged to be recovered by the plaintiffs to the sum of $8,189.44 and allowing the claim of the defendant Beale for $1,225.15, and as so modified affirmed, with costs to the appellants.

O'MALLEY, TOWNLEY, GLENNON and COHN, JJ., concur.

Judgment, so far as appealed from, unanimously modified by reducing the amount adjudged to be recovered by the plaintiffs to the sum of $8,189.44 and allowing the claim of the defendant Phelan Beale for $1,225.15, and as so modified affirmed, with costs to the appellants. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.